UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CHRISTOPHER W. HARRIS and RACHEL BURRUS HARRIS, individually and on behalf of their minor child, A.H. | CIVIL ACTION NO.: |
| | JUDGE: |
| VERSUS | MAGISTRATE JUDGE: |
| FISHER-PRICE, INC. and MATTEL, INC. | JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

## I.    PARTIES

1.    Plaintiffs, Christopher W. Harris and Rachel Burrus Harris, are residents of and domiciled in the Parish of Catahoula, State of Louisiana.  In or around January or February of 2019, the plaintiffs purchased a Fisher-Price Auto Rock 'n Play Sleeper (hereinafter referred to as a "Rock 'n Play Sleeper") from Wal-Mart Supercenter in Eunice, Louisiana for approximately $64.00.  Plaintiffs purchased the Rock 'n Play Sleeper for their infant son, A.H., with the understanding that the Rock 'n Play Sleeper was a safe product.  This understanding was based, in part, on the defendants' (Fisher-Price, Inc. and Mattel, Inc.) marketing the Rock 'n Play Sleeper as a safe and suitable environment for infants to sleep in for prolonged periods and/or overnight.

2.    Plaintiffs bring this action individually and on behalf of their minor child, A.H., who died as a result of the defective nature of the defendants' Rock 'n Play Sleeper.  At the time of his death, A.H. was a resident of and domiciled in the Parish of St. Landry, State of Louisiana.

At the time of his death, AH was three (3) months old (Date of birth: 12/22/2018. Date of death: 3/26/2019).

3.    At all times material hereto, Christopher Harris and Rachel Burrus Harris were the biological parents of their unemancipated minor child, A.H. As such, Christopher Harris and Rachel Burrus Harris have the procedural capacity and are the proper parties to bring this action on behalf of A.H.

4.    As the surviving parents of their unemancipated minor child/the decedent, A.H., Christopher Harris and Rachel Burrus Harris are entitled to maintain this wrongful death action pursuant to La. C.C. art. 2315.2 and entitled to maintain this survival action on behalf of A.H. pursuant to La. C.C. art. 2315.1.

5.    Defendant, Fisher-Price, Inc. (hereinafter referred to as "Fisher-Price"), is a Delaware corporation with its principal place of business in New York. Defendant, Fisher-Price, is and was at all times material hereto doing business in the State of Louisiana, including the Western District of Louisiana, in that its products have been sold to, distributed in and used in Louisiana. Fisher-Price manufactures and markets products for the care of infants and children to consumers throughout the United States, including the State of Louisiana. Fisher-Price is a non-resident Defendant who engages in business in Louisiana and does not maintain a regular place of business or a designated agent for service of process in Louisiana. On information and belief, Fisher-Price conducts substantial business in the State of Louisiana by marketing, advertising, distributing and selling toys and products for infants, babies and children, including the Fisher-Price Rock 'n Play Sleeper, which is the subject matter of this litigation. Fisher-Price may be served with process by serving its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.      Defendant, Fisher-Price, Inc. is a wholly owned subsidiary of Defendant, Mattel, Inc.   The website on which the Defendants advertised their Rock 'n Play Sleeper includes Mattel's name: http://fisher-price.mattel.com.

7.      Defendant, Mattel, Inc. (hereinafter referred to as "Mattel"), is a Delaware corporation authorized to do and doing business in the State of Louisiana, including the Western District of Louisiana, with its principal place of business in California.   Mattel is one of the world's largest toy makers and is the corporate parent of Fisher-Price.   On its annual filings with the U.S. Securities and Exchange Commission, Mattel references Fisher-Price as a "brand" in "Mattel's portfolio of global brands."[1]

8.      Defendant, Mattel, is and was at all times material hereto doing business in the State of Louisiana, including the Western District of Louisiana, in that its products have been sold to, distributed in and used in Louisiana.   Defendant, Mattel, is a non-resident who engages in business in Louisiana and does not maintain a regular place of business or a designated agent for service of process in Louisiana. On information and belief, Mattel conducts substantial business in the State of Louisiana by marketing, advertising, distributing and selling toys and products for infants, babies and children, including the Fisher-Price Rock 'n Play Sleeper, which is the subject matter of this litigation.   Mattel may be served with process by serving its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

9.      Until April 12, 2019, Mattel directly and/or through Fisher-Price, designed, marketed, advertised, distributed and sold Rock 'n Play Sleepers throughout the United States, including in Louisiana.

---

[1] *See, e.g.,* Mattel, Inc., 2018 10-K, at 4 (February 22, 2019); Mattel, Inc., 2017 10-K, at 3 (February 27, 2018).

10. Mattel shares overall responsibility for the safety of Fisher-Price products, including the Rock 'n Play Sleepers. All recall and safety alerts for both Fisher-Price and Mattel products, as well as customer service for both Fisher-Price and Mattel products, are found on the Mattel website.

## II.    JURISDICTION

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (diversity jurisdiction). The amount in controversy exceeds $75,000.00 exclusive of interest and costs. There is complete diversity of citizenship between Plaintiffs and Defendants. Plaintiffs are residents and citizens of and are domiciled in the State of Louisiana. Both defendants are entities organized in states other than the State of Louisiana, both Defendants have their principal place of business in a state other than the State of Louisiana, and Defendants are not citizens or residents of the State of Louisiana.

12. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, arise under federal law.

13. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

14. This court has personal jurisdiction over Fisher-Price because Fisher-Price conducts business in the State of Louisiana and/or is systematically and continuously conducting business in the State of Louisiana, including, but not limited to, the marketing, advertising, selling and distributing of its products, including the Rock 'n Play Sleeper, to the residents in this State. Fisher-Price maintains and carries on systematic and continuous contacts in Louisiana and regularly transacts business within Louisiana, including but not limited to marketing, distributing

and selling the Fisher-Price Rock 'n Play Sleeper in this judicial district. Fisher-Price purposefully directs or directed their actions toward the State of Louisiana, and they have the requisite minimum contacts with the State of Louisiana necessary to constitutionally permit the Court to exercise jurisdiction.

15.     Upon information and belief, defendant, Fisher-Price, purposefully availed itself of the privilege of conducting business activities within the State of Louisiana, thus invoking the benefits and protection of its laws.

16.     Fisher-Price caused tortious injury by acts and omissions in the State of Louisiana and more specifically, within this judicial district. Fisher-Price has regularly conducted and solicited business in this state and judicial district, has derived substantial revenue from products used and/or purchased in this state and judicial district, including but not limited to the Rock 'n Play Sleeper.

17.     This court has personal jurisdiction over Mattel because Mattel conducts business in the State of Louisiana and/or is systematically and continuously conducting business in the State of Louisiana, including, but not limited to, the marketing, advertising, selling and distributing of its products, including the Rock 'n Play Sleeper, to the residents in this State. Mattel maintains and carries on systematic and continuous contacts in Louisiana and regularly transacts business within Louisiana, including but not limited to marketing, distributing and selling the Fisher-Price Rock 'n Play Sleeper in this judicial district. Mattel purposefully directs or directed their actions toward the State of Louisiana, and they have the requisite minimum contacts with the State of Louisiana necessary to constitutionally permit the Court to exercise jurisdiction.

18.     Upon information and belief, defendant, Mattel, purposefully availed itself of the privilege of conducting business activities within the State of Louisiana, thus invoking the benefits and protection of its laws.

19.     Mattel caused tortious injury by acts and omissions in the State of Louisiana and more specifically, within this judicial district.  Mattel has regularly conducted and solicited business in this state and judicial district, has derived substantial revenue from products used and/or purchased in this state and judicial district, including but not limited to the Rock 'n Play Sleeper.

### III.     VENUE

20.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.  The defendants, Fisher-Price and Mattel, distributed, marketed, advertised and sold the Fisher-Price Rock 'n Play Sleeper within this judicial district.  The plaintiffs purchased the Fisher-Price Rock 'n Play Sleeper at a store in this judicial district, the plaintiffs' minor son used the defective product (Rock 'n Play Sleeper) in this judicial district and the plaintiffs' injuries and damages occurred within this judicial district.

### IV.     FACTUAL BACKGROUND

21.     The Rock 'n Play Sleeper is an inclined sleeper product first introduced to the U.S. Market by Fisher-Price and Mattel in approximately October of 2009.[2]

22.     Inclined sleepers such as the Rock 'n Play Sleeper are sleeping products that are inclined upwards on one end to raise a baby's head and torso up to approximately 30 degrees. The Rock 'n Play Sleeper was designed as a flexible folding frame with a fabric hammock

---

[2] Decl. of Michael F. Fenn ("Fenn Declaration"), paragraph 6, *Butler v. Mattel, Inc., and Fisher-Price, Inc.,* No. 2:13-cv-00306-DSF-SS (C.D. Cal. Jan. 17, 2014).

suspended between the legs. The product has high sides and sits at an incline, causing the infant placed in it to also sit at an incline.

23.    The Rock 'n Play Sleeper comes with padded inserts that go behind and up to the sides of the infant's head and body. The shape of the Rock 'n Play Sleeper's hammock includes an additional angle that pushes up the legs where the infant's torso meets the legs, causing the infant to lay in a semi-seated position. *See* Figures "1" and "2" below for photographs of exemplar models that are similar to the plaintiffs' Rock 'n Play Sleeper:

*Figure 1:*



*Figure 2:*



24. The Rock 'n Play Sleeper was designed to rock forward and back and was advertised for both sleep and playtime.

25.     Since the release of the Rock 'n Play Sleeper, approximately 4.7 million units have been sold.[3] Versions of the Rock 'n Play Sleeper have retailed for between $40 and $149 at various times.[4]

26.     The Rock 'n Play Sleeper was sold throughout the United States.  As of January 2014, Fisher-Price sold 80% of its Rock 'n Play Sleepers through Target, Walmart, Amazon and the now-defunct, Toys 'R Us/Babies 'R Us.[5]  Fisher-Price also sold the Rock 'n Play Sleeper directly to consumers on its own website.

27.     The Rock 'n Play Sleeper was, and is, a defective and unsafe product which has caused numerous deaths and injuries throughout the United States, including the death of plaintiffs' minor child, A.H.  The marketing of this product by defendants, Fisher-Price, Inc. and Mattel, Inc. (hereinafter sometimes collectively referred to as "Defendants"), as appropriate for prolonged sleep, including all night sleep, was intentional and overt.  Not only is "Sleeper" in the name of the product, but the boxes in which the Rock 'n Play Sleepers were sold, and other materials used to promote them, prominently exclaim, "Baby can sleep at comfortable incline all night long!" and make similar statements about its fitness for nighttime sleep.  This marketing was dangerously false and misleading, as the product is not safe for all-night or prolonged sleep for infants.

28.     The Rock 'n Play Sleeper is inherently unsafe as a sleeper and unfit for its intended use.  Its use poses a number of serious safety risks that have led to many documented instances of infant deaths and injuries.  By positioning an infant at a 30-degree incline, the Rock

---

[3] CPSC, "Fisher-Price Recalls Rock 'n Play Sleepers Due to Repots of Deaths," April 12, 2019, https://www.cpsc.gov/Recalls/2019/fisher-price-recalls-rock-n-play-sleepers-due-to-reports-of-deaths (Last visited: May 16, 2019).

[4] *Id.*

[5] Decl. of Michael F. Fenn ("Fenn Declaration"), paragraph 5, *Butler v. Mattel, Inc., and Fisher-Price, Inc.,* No. 2:13-cv-00306-DSF-SS (C.D. Cal. Jan. 17, 2014).

'n Play Sleeper significantly increases the risk that the infant's head will slip into a dangerous position, tilt to constrict the windpipe and/or cause the infant's face to become pressed against the padded fabric in the sleeper and block airflow, which the infant may be unable to correct. This increases the risk of death by asphyxiation, including positional asphyxiation.

29.    Fisher-Price advertised the Rock 'n Play Sleeper as a place for infants to sleep, specifically marketing it as a "Sleeper," and touted it as a miracle product that could give exhausted parents of newborns some much-needed rest.    Fisher-Price's public statements include:

a.    "The inclined seats helps your baby sleep all night."[6]

b.    "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much-needed shut-eye."[7]

c.    "Whether they just need a quick snooze or are ready to settle in for the night, the Rock 'n Play sleeper's comfortable, restful environment and dual auto-rocking setting help teeny-tiny ones wind down and relax with a consistent routine."[8]

d.    "Inclined sleeper designed for all-night sleep."[9]

e.    "Baby can sleep at a comfy incline **all night long!**"[10]

30.    All the while, children were being harmed by the unsafe design of the product. Fisher-Price, in conjunction with the CPSC, confirmed in a joint statement on April 5, 2019 that at least ten (10) deaths of infants over the age of three months had been attributed to the Rock 'n

---

[6] Wayback Machine Archive of Newborn Rock 'n Play Sleeper Fisher-Price page (March 29, 2017), https://web.archive.org/web/20170329030329/https:/fisher-price.mattel.com/shop/en-us/fp/baby-sleepers/newborn-rockn-play-sleeper-bct91 (last visited: August 4, 2019)

[7] Google Cache Snapshot of Fisher-Price Auto Rock 'n Play Sleeper Amazon page (March 29, 2019),https://webcache.googleusercontent.com/search?q=cache:GGgqXs--6UAJ:https://www.amazon.com/Fisher-Price-Auto-Rock-PLay-Sleeper/dp/B01K7VHP90+&cd=2&hl=en&ct=clnk&gl=us

[8] *Id.*

[9] Consumer Reports Investigation Article.

[10] *See* Dr. Natasha Burgert, *Dear Fisher-Price....,* https://www.kckidsdoc.com/kc-kids-doc/dear-fisher-price (last visited: August 4, 2019 ) (emphasis added by plaintiffs)

Play Sleeper since 2015.[11] In fact, as Consumer Reports disclosed on April 8, 2019, the Rock 'n Play Sleeper contributed to at least thirty-two (32) deaths since its release.[12]

31.     On April 5, 2019, the Consumer Product Safety Commission ("CPSC") and Fisher-Price issued a statement acknowledging that ten (10) infants have died while in the Rock 'n Play Sleeper since 2015, and warning consumers to stop using the Rock 'n Play Sleeper once the infant reaches three months of age or as soon as the infant exhibits rollover capabilities.[13] The news release stated, in relevant part:

> The Consumer Product Safety Commission (CPSC) and Fisher-Price warn consumers about the Fisher-Price Rock 'n Play due to reports of death when infants roll over in the product. According to medical literature, infants typically begin rollover behavior at 3 months. **The CPSC is aware of 10 infant deaths in the Rock 'n Play that have occurred since 2015**, after infants rolled from their back to their stomach or side, while unrestrained. **All 10 infants were 3 months or older.** (bold added for emphasis by plaintiffs)
>
> **Because deaths continue to occur, <u>CPSC is recommending consumers stop use of the product by three months of age, or as soon as an infant exhibits rollover capabilities</u>.** CPSC has previously warned consumers to use restraints in infant inclined sleep products. (bold added for emphasis by plaintiffs)
>
> Fisher-Price warns consumers to stop using the product when infants can roll over, but the reported deaths show that some consumers are still using the product when infants are capable of rolling and without using the three point harness restraint.

---

[11] *CPSC ALERT: CPSC and Fisher-Price Warn Customers About Fisher-Price Rock 'N Play Due to Reports of Death When Infants Roll Over in the Product* (April 5, 2019), https://www.cpsc.gov/Newsroom/News-Releases/2019/CPSC-ALERT-CPSC-and-Fisher-Price-Warn-Consumers-About-Fisher-Price-Rock-N-Play-Due-to-Reports-of-Death-When-Infants-Roll-Over-in-the-Product (last visited: August 4, 2019)

[12] *Fisher-Price Rock 'n Play Should Be Recalled, Consumer Reports Says* (originally published April 8, 2019), https://www.consumerreports.org/recalls/fisher-price-rock-n-play-sleeper-should-be-recalled-consumer-reports-says/ (last visited: August 4, 2019)

[13] CPSC, "CPSC ALERT: CPSC and Fisher-Price Warn Consumers About Fisher-Price Rock 'N Play Due to Reports of Death When Infants Roll Over in the Product," April 5, 2019, https://www.cpsc.gov/content/cpsc-alert-cpsc-and-fisher-price-warn-consumers-about-fisher-price-rock-%E2%80%98n-play-due-to (last visited: August 4, 2019).

CPSC and Fisher-Price remind consumers to create a safe sleep environment for infants, whether using a crib, bassinet, play yard, or inclined sleeper: Never add blankets, pillows, stuffed toys, or other items to the environment and always place infants to sleep on their backs.

The commission voted to public a finding that the health and safety of the public requires immediate notice. (emphasis added by plaintiffs)

32.    Mattel issued a press release[14] on April 5, 2019, shortly after the joint

CPSC/Fisher-Price announcement, which stated in relevant part:

A child fatality is an unimaginable tragedy.

Fisher-Price has a long, proud tradition of prioritizing safety as the cornerstone of our mission. Generations of parents have trusted us for almost 90 years to provide safe products for their children. We are there from the moment you bring your child home and take our responsibility for product safety very seriously.

Today, the Consumer Product Safety Commission (CPSC) and Fisher-Price have jointly issued an alert warning parents and caregivers to discontinue use of the Rock 'n Play Sleeper when infants begin to roll over. To ensure a safe sleep environment for infants, we remind parents and caregivers to follow all safety warnings included with the product: always use the provided restraints, always place infants on their backs to sleep, and make sure that no pillows, blankets or extra padding are placed in the Rock 'n Play Sleeper. **The Rock 'n Play Sleeper meets all applicable safety standards**, including those of the international standards organization, known as ASTM International, and is certified by the Juvenile Products Manufacturers Association (JPMA). (emphasis added by plaintiffs)

Fisher-Price and every one of our employees take the responsibility of being part of your family seriously, and we are committed to earning that trust every day.

---

[14]Mattel Corporation. "Media Statement on the U.S. Consumer Product Safety Commission-Fishter-Price Joint Security Alert released on April 5, 2019." April 5, 2019. https://news.mattel.com/news/media-statement-on-the-u-s-consumer-product-safety-commission-fisher-priceR-joint-security-alert-released-on-april-5-2019 (Last visited: May 16, 2019)

33.    On April 8, 2019, Consumer Reports published a lengthy article entitled *Fisher-Price Rock 'n Play Sleeper Should be Recalled, Consumer Reports Says.*[15] The article describes the results of Consumer Report's investigation, which found the Rock 'n Play Sleeper is tied to at least 32 infant deaths. Consumer Reports noted that the Rock 'n Play Sleeper "has not been recalled by Fisher-Price, part of the children's product giant Mattel, which had about $4.5 billion in sales in 2018. The deaths prompted only warnings by the company and the CPSC, which does not have a mandatory safety standard for infant reclined sleep products." The article further notes that "the number of incidents associated with the Rock 'n Play Sleeper, combined with long-standing expert medical advice that babies should sleep on firm, flat surfaces, raises serious safety concerns about the product."

34.    On April 9, 2019, the American Academy of Pediatrics ("AAP") issued a press release[16] calling on the CPSC to recall the Rock 'n Play Sleeper and urging parents to stop using the Rock 'n Play Sleepers immediately, which stated in relevant part as follows:

> The American Academy of Pediatrics (AAP) calls on the U.S. Consumer Product Safety Commission (CPSC) to issue an immediate recall for the Fisher-Price Rock 'n Play Sleeper, which has been tied **to 32 sleep-related infant deaths**, according to a new analysis by Consumer Reports. (bold added for emphasis by plaintiffs)

> AAP urges parents to stop using the product immediately. Stores should remove the Rock 'n Play Sleeper from their shelves. **A warning issued by the CPSC and Fisher-Price on April 5 did not go far enough to ensure safety and protect infants, according to the AAP**. (bold added for emphasis by plaintiffs)

---

[15]  https://www.consumerreports.org/recalls/fisher-price-rock-n-play-sleeper-should-be-recalled-consumer-reports-says/ (last visited: August 4, 2019)

[16] AAP. "AAP Urges U.S. Consumer Product Safety Commission to Recall Fisher-Price Rock 'n Play Sleeper." April 9, 2019. https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Urges-U-S-Consumer-Product-Safety-Commission-to-Recall-Fisher-Price-Rock-n-Play-Sleeper.aspx (Last visited: May 16, 2019)

**"This product is deadly and should be recalled immediately,"** said Kyle Yasuda, MD, FAAP, president of the American Academy of Pediatrics. "When parents purchase a product for their baby or child, many assume that if it's being sold in a store, it must be safe to use. Tragically, that is not the case. **There is convincing evidence that the Rock 'n Play inclined sleeper puts infants' lives as risk, and CPSC must step up and take immediate action to remove it from stores and prevent further tragedies."** (bold added for emphasis by plaintiffs)

Last week, the CPSC and manufacturers alerted consumers to stop using the product when the infant reaches 3 months of age or is capable of rolling over, citing 10 infant deaths that occurred in the Rock 'n Play. The Consumer Reports article, published April 8, tied a total of 32 deaths to the Rock 'n Play, including the 10 noted in last week's warning.

**Consumer Reports concluded that these 32 deaths, between 2011 and 2018, included babies even younger than the 3-month threshold cited in the initial warning, which is alarming**. The cause of death listed for some babies was asphyxia, or the inability to breathe caused by the babies' position. **AAP urges parents of children of all ages to immediately stop using the Rock 'n Play.** (bold added for emphasis by plaintiffs)

"We cannot put any more children's lives at risk by keeping these dangerous products on the shelves," said Rachel Moon, MD, FAAP, chair of the AAP Task Force on SIDS. **"The Rock 'n Play inclined sleeper should be removed from the market immediately. It does not meet the AAP's recommendations for a safe sleep environment for any baby**. Infants should always sleep on their back, on a separate, flat and firm sleep surface without any bumpers or bedding." (bold added for emphasis by plaintiffs)

The AAP does not recommend inclined sleep products like the Rock 'n Play, or any other products for sleep that require restraining a baby.

35.    Finally, on April 12, 2019, after at least 32 infants died and hundreds more were injured, after millions of infants were exposed to risk of death, and after the AAP, as well as a multitude of other sources, warned them of the risk, Defendants were forced to recall all Rock 'n Play Sleepers (the "Recall").[17]  The title of the Recall notice is, "Fisher-Price Recalls Rock 'n

---

[17] CPSC, "Fisher-Price Recalls Rock 'n Play Sleepers Due to Repots of Deaths," April 12, 2019, https://www.cpsc.gov/Recalls/2019/fisher-price-recalls-rock-n-play-sleepers-due-to-reports-of-deaths (Last visited: May 16, 2019).

Play Sleepers Due to Reports of Deaths." Approximately 4.7 million Rock 'n Play Sleepers were subject to the recall.[18] The Recall announcement states, in part, as follows:

**Name of product:**
All models of Rock 'n Play Sleeper

**Hazard:**
Infant fatalities have occurred in Rock 'n Play Sleepers, after the infants rolled from their back to their stomach or side while unrestrained, or under other circumstances.

**Remedy:**
Consumers should immediately stop using the product and contact Fisher-Price for a refund or voucher.

**Incidents/Injuries:**
Since the 2009 product introduction, over 30 infant fatalities have occurred in Rock 'n Play Sleepers, after the infants rolled over while unrestrained, or under other circumstances.

**Sold at:**
Major retailers for approximately $40 to $149.

**Recall number:**
19-905.

36.    The terms of the Recall are set forth on Mattel's website as follows:

If the Fisher-Price Rock 'n Play Sleeper was originally purchased new – either by you or by a prior owner of the product – on or **after** 10/12/2018, you will receive a full cash refund. If you include your original receipt you will be reimbursed for the receipt amount including sales taxes paid. If you do not have your receipt, please write the month and year of purchase on one of the hubs you are returning, and we will determine the refund amount for you.

If the Fisher-Price Rock 'n Play Sleeper was originally purchased new – either by you or by a prior owner of the product – **before** 10/12/2018, you will receive a voucher for a Fisher-Price product to be selected from a list of products to be provided by Fisher-Price. Your product choice will be determined by the original date of purchase of the product. To establish your date of purchase, please send in your original receipt if you have it.

---

[18] *Id.*

> If you do not have your receipt, please write the month and year of your purchase on one of the hubs you are returning.[19]

37.    In 2005, the APP updated its safety recommendations to reflect continued research in the field.[20]  The recommendations reaffirmed that infants should be placed on their backs to sleep and that firm sleeping surfaces be used.  "A firm crib mattress, covered by a sheet, is the recommended sleeping surface."    To "[a]void the development of positional plagiocephaly," the AAP recommended that caregivers alter the infant's supine head position during sleep and not allow infants to spend excessive time in bouncers, carriers and car seats.

38.    In 2011, following updated research, the AAP expanded its safe sleep recommendations to include a "firm sleep surface."[21]  The AAP also warned that "[c]ar seats and other sitting devices are not recommended for routine sleep."  In addition, the AAP at the same time recommended that infants not sleep next to "soft objects," including "pillows," "bumper pads" and "positioners."[22]

39.    The 2011 AAP recommendations also recognized the particular risk to very young infants: "Infants who are younger than 4 months are particularly at risk, because they might assume positions that can create risk of suffocation or airway obstruction."[23]  The AAP

---

[19] Mattel. "Fisher-Price Rock 'n Play Sleeper Recall."

https://service.mattel.com/us/recall/BJD57_ivr.asp (Last visited: May 16, 2019).

[20] AAP, *The Changing Concept of Sudden Infant Death Syndrome: Diagnostic Coding Shifts, Controversies Regarding the Sleeping Environment, and New Variables to Consider in Reducing Risk,* November 2005, Volume 116 / Issue 5, Pediatrics.

[21] *AAP Expands Guidelines for Infant Sleep Safety and SIDS Risk Reduction* (Oct. 18, 2011), https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Expands-Guidelines-for-Infant-Sleep-Safety-and-SIDS-Risk-Reduction.aspx (last visited: August 4, 2019)

[22] *Id.*

[23] *SIDS and Other Sleep-Related Infant Deaths: Expansion of Recommendations for Infant Sleeping Environment* (Nov. 2011),  https://pediatrics.aappublications.org/content/128/5/1030 (last visited: August 4, 2019)

further noted: "If an infant falls asleep in a sitting device, he or she should be removed from the product and moved to a crib or other appropriate flat surface as soon as is practicable."[24]

40.     A critical common design element of the Rock 'n Play Sleeper is a collapsible frame that supports a fabric hammock with tall sides (Figure 3), forcing the infant into a reclined position, with the head elevated at an approximately 30-degree angle from the lower part of the baby's torso (Figure 4) and restraints (Figure 5).   There is a hard-plastic shell inside the hammock that is covered with soft padded material (Figure 6 and 7), upon which the baby is placed.   Different photographs of exemplar models that are similar to the plaintiffs' Rock 'n Play Sleeper are seen below:

*Figure 3:*



---

[24] *Id.*

*Figure 4:*



*Figure 5:*



*Figure 6:*



*Figure 7:*



41.     Some "Premium" and "Deluxe" models have an additional padding around the head.

42.     The Rock 'n Play Sleeper does not allow the baby to sleep in a supine position, as recommended by infant sleep safety experts, and is obviously not flat. Therefore, it does not comply with the guidelines promulgated by infant sleep experts and medical professionals that a firm mattress, covered by a sheet, is the safest sleeping environment for infants.

43.     Despite knowing that the Rock 'n Play Sleeper is unsafe for overnight or prolonged sleep for infants, Defendants marketed and sold the product as a sleeper, leading parents to reasonably believe that the product is safe for its stated purpose. The words "sleeper" and "sleep" appear no fewer than five times on the package, which depicts pictures of a mom blissfully sleeping or about to fall asleep with the baby in the Rock 'n Play Sleeper.

44.     The National Institutes of Health ("NIH") of the United States Department of Health and Human Services and other federal and national organizations have worked with the AAP, a non-profit group with a membership of 66,000 primary care pediatricians, pediatric medical subspecialists and pediatric surgical specialists, to develop safe sleep standards for babies.[25] Defendants, as manufacturers and marketers of widely sold infant sleepers, are indubitably well aware of NIH and AAP standards.

45.     In November of 2005, at least three (3) years before Defendants first began to market the Rock 'n Play Sleeper, the AAP issued a Policy Statement[26] entitled, "The Changing Concept of Sudden Infant Death Syndrome: Diagnostic Coding Shifts, Controversies Regarding

---

[25]     https://www.nih.gov/news-events/news-releases/federal-agencies-express-support-updated-safe-infant-sleep-recommendations (last visited: August 4, 2019)

[26] AAP, *The Changing Concept of Sudden Infant Death Syndrome: Diagnostic Coding Shifts, Controversies Regarding the Sleeping Environment, and New Variables to Consider in Reducing Risk,* November 2005, Volume 116 / Issue 5, Pediatrics.

the Sleeping Environment, and New Variables to Consider in Reducing Risk," which contained detailed guidelines and recommendations on safe sleep for babies and infants, which included:

    a.    "Back to sleep: Infants should be placed for sleep in a supine position (wholly on the back) for every sleep."

    b.    "Use a firm sleep surface: Soft materials or objects…should not be placed under a sleeping infant.  A firm crib mattress, covered by a sheet, is the recommended sleeping surface."

46.    The Rock 'n Play Sleeper is not a crib mattress.  It features raised soft sides.  It is positioned at an angle which makes it impossible for the infant to "sleep in a supine position." Simply put, it is undeniably unsafe under AAP guidelines and has been since before the Defendants first began marketing it in 2009.

47.    Nonetheless, Defendants introduced it to the market as a safe overnight sleep product in 2009 and continued to market and sell it as such in the U.S. market for a decade, until they were forced to issue a recall on April 12, 2019.

48.    While the CPSC and Fisher-Price recommended that consumers stop using the Rock 'n Play Sleeper when an infant reaches three months of age, or as soon as an infant exhibits rollover capabilities, as set forth herein, the AAP recommends that inclined sleepers like the Rock 'n Play Sleeper should **never** be used for overnight or prolonged sleep for **any** infants, including newborns, whatever the age.  Thus, after the announcement by CPSC and Fisher-Price, the AAP stated:

> "We don't recommend that babies are placed to sleep with their heads elevated because that is a position that would be subject to accidental suffocation [and] strangulation in bed," said Feldman-Winter of the AAP. Instead, the AAP says that for prolonged or nighttime sleep, babies should be put on their backs, unrestrained, alone, on a flat, firm surface, such as a mattress covered by a fitted sheet in a bare crib, bassinet or play yard.[27]

---

[27]   https://www.consumerreports.org/recalls/fisher-price-rock-n-play-sleeper-should-be-recalled-consumer-reports-says/ (last visited: August 4, 2019)

49.    Further, while the CPSC and Fisher-Price suggest that parents using the restraints on their babies when in the Rock 'n Play Sleeper renders the product safer, the AAP's advice is the opposite:

> [T]he American Academy of Pediatrics says it does not recommend products for routine sleep that require restraining a baby, especially if that product also rocks. "To [fasten] a baby down to a surface and then rock the baby is not consistent with our recommendations," said Lori-Feldman-Winter, M.D., a member of the AAP task force on Sudden Infant Death Syndrome (SIDS) and a professor of pediatrics at Cooper Medical School of Rowan University in Camden, N.J.[28]

50.    Despite their indisputable knowledge of the AAP's guidelines; individual physicians' and consumer groups' recommendations that babies sleep supine, that their heads not be elevated, that they sleep on a firm surface without soft materials, and that sitting devices such as car seats, strollers, swings, infant carriers and infant slings are not recommended for routine sleep; the products being  banned as "sleepers" in Australia and Canada; and the numerous reports of injury and even death, Defendants have marketed and continued, until April 12, 2019, to market the Rock 'n Play Sleeper in the U.S. as suitable for all night sleep for babies.

51.    Defendants' deceptive advertising of the Rock 'n Play Sleeper starts with its very name: "**Sleeper**." By naming the product a "Sleeper," Defendants misled consumers into believing that the product is a safe and suitable place for babies to sleep. A reasonable consumer would assume the Rock 'n Play Sleeper's design is consistent with the applicable guidelines and recommendations about how babies should be safely placed to sleep. As described above, the product actually is unfit for use as an infant sleeper.

---

[28]    https://www.consumerreports.org/recalls/fisher-price-rock-n-play-sleeper-should-be-recalled-consumer-reports-says/ (last visited: August 4, 2019)

52. One of the principal means of in-store advertising is the box in which the product is packaged. The boxes prominently tout that the product is suitable for all-night sleep as illustrated by the figures (Figures 8 – 11) which are seen below, which are exemplar images of the boxes:



*Above: Figure 8*



*Above: Figure 9*



*Above: Figure 10*



*Above: Figure 11* (This is an exemplar box for the model, Auto Rock 'n Play Sleeper, that the plaintiffs purchased and used and in which A.H. was in at the time of his death)

53.     The marketing statements on the packaging conflict with the AAP's guidelines and recommendations, and those of other infant sleep experts.

54.     For example, Defendants' statements that "**Baby can sleep at a comfortable incline all night long!**" (Figure 8 and 11), "Comfortable incline for babies that need it" (Figure 9), and "Incline or Recline – Choose the position that baby likes best" (Figure 10) are contrary to the AAP's guidelines and recommendations that babies sleep supine and that their heads not be elevated.[29]

55.     Defendants' statement that "Extra-plush fabrics for extra-comfy sleep" (Figure 8) is contrary to the AAP's guideline and recommendation that soft materials should not be placed under a sleeping infant.

56.     Defendants' statement that the product is a "Nighttime sleeper and a playtime seat!" (Figure 9) and an "Adjustable seat for all-night sleep!" (Figure 10) is contrary to the AAP's guideline and recommendation that sitting devices are not recommended for routine sleep.  Similar statement appeared on all of Defendants' packaging for the Rock 'n Play Sleeper at all relevant times.

57.     Defendants' marketing on the Fisher-Price.mattel.com website also conflicts with the AAP's guidelines and recommendations, touting the Rock 'n Play Sleeper as a "Nighttime sleeper and playtime seat in one!  This inclined sleeper rocks!  The supportive, angled seat back keeps baby elevated for playtime and inclined sleep (the way some babies sleep best!), to help baby sleep alllll [sic] night long."[30]

---

[29] A baby may prefer to be inclined or reclined, but sleeping in an inclined or reclined position is inconsistent with AAP recommendations because it increases the risk of suffocation.

[30] https://fisher-price.mattel.com/shop/en-us/fp/moonlight-meadow-deluxe-newborn-rock-n-play-sleeper-chx77.

58.     The Defendants' webpage also shows pictures of mothers lying down in bed with their babies in Rock 'n Play Sleepers next to them, which indicates that mothers can sleep while their babies sleep in the product.   These statements and images are misleading for the same reasons the images and statements on the boxes are misleading.

59.     Defendants limited disclosures inside the Rock 'n Play Sleeper box do not disclose the inherent danger of the product and are worded in such a way that they are intentionally misleading.   These in-box disclosures also make recommendations that parents cannot possibly follow.   There are no disclosures on the box itself.

60.     There is a warning label printed on the Rock 'n Play Sleeper that cannot be read – if an exhausted parent notices or reads it at all – until the product is removed from the box.   The "Warning" on the plaintiffs' exact Rock 'n Play Sleeper states:



*Above: Figure 12*

61.     Because a parent cannot see the label until after opening the box, these statements on the Rock 'n Play, even if they were adequate warnings (which they are not), cannot inform a

consumer's decision about whether to purchase or obtain the product. Even if the disclosures were on the box, they would be insufficient and useless due to numerous dangerous omissions that render them materially misleading.

62. First, Defendants states that infants have suffocated "on **added** pillows, blankets and extra padding" (emphasis added), leading parents to reasonably believe that the padding that comes with the Rock 'n Play Sleeper **is** safe and cannot cause suffocation. Indeed, the statement that follows states: "Only use the pad provided by Fisher-Price. Never place extra padding under or beside infant." As Defendants are well aware, the AAP guidelines states **any** soft material under a baby can cause suffocation. As described above, numerous instances of babies suffocating because of the padding that comes with inclined sleepers have been reported.

63. Further, Defendants omit the critical material fact that babies can also die due to positional asphyxiation. Positional asphyxiation can occur when a baby tips to one side and because of an inclined back position, is unable to pull himself out of that position, and his face either presses into the soft fabric of the sides, or his neck is bent at such an angle that oxygen cannot get through. Numerous deaths and injuries from positional asphyxiation have been documented, including the death of the plaintiffs' minor child, A.H.

64. Similarly, in a so-called warning that is obviously designed to mislead parents while skirting AAP's guidelines, Defendants state, "Always place child on back to sleep." But defendants omit the crucial fact that parents should always place infants supine – **flat on their backs** – for overnight or prolonged sleep, and that allowing babies to sleep on an incline is dangerous. Given its marketing as an overnight sleeper, reasonable parents cannot be expected to conclude that the warning means anything other than placing the infant on its back **in the sleeper.**

65.     Significantly, this supposed warning is not listed directly under the "Suffocation Hazard" header, which only mentions using an additional layer of padding, but is instead listed separately.    Thus, even with the misleading partial disclosure, Defendants omitted the asphyxiation hazard that the AAP guidelines are designed to prevent.

66.     In addition, Defendants state that parents should "always use restraint system," but fail to disclose that the use of restraints on babies in the Rock 'n Play Sleeper does not render the Rock 'n Play Sleeper safe and, indeed, may itself be dangerous.   Defendants omit the material fact that baby deaths and many injuries have occurred when using restraints on a baby in the Rock 'n Play Sleeper.   Nor do they disclose that strapping a baby up for 16 hours at a time in the sleeper can result in physical deformities in the baby's head and neck.

67.     Defendants further state that parents should "always provide the supervision necessary for the continued safety of your child," while promoting the Rock 'n Play Sleeper as an all-night sleeper.   This instruction is impossible to comply with because a sleeping parent is in no position to supervise her child

68.     Finally, Defendants advise parents that "[w]hen used for playing, never leave a child unattended," which suggests that a parent could safely leave the child unattended when the sleeper was not being used for play – such as when the infant is **sleeping**.

69.     The user manuals for Rock 'n Play Sleepers, which are substantially similar in all material respects, also contain misrepresentations and omissions.   These manuals are inside the boxes in which the products were sold.

70.     The manuals contain warnings substantially similar to the one below, which is an exemplar, similar to the warning contained in the manual that came with the Rock 'n Play Sleeper that plaintiffs purchased:

---

## ⚠ WARNING

**FALL HAZARD**
To prevent falls, **stop using the product when** infant:
  • Begins to roll over, or
  • Can pull up on sides (approximately 5 months).
• **Always** use restraint system.
**SUFFOCATION HAZARD**
Infants have suffocated:
• On added pillows, blankets and extra padding.
  - Only **use the pad provided** by Fisher-Price.
  - **Never** place extra padding under or beside infant.
• **Always** place child on **back to sleep**.
• Strings can cause strangulation! **Never** place items with a string around a child's neck such as hood strings or pacifier cords. **Never** suspend strings over product or attach strings to toys.
• **Never** place product near a window where cords from blinds or drapes can strangle a child.
• **Always** provide the supervision necessary for the continued safety of your child.
• When used for playing, never leave child unattended.

---

*Above: Figure 13*

71.     Like the warning label on the Rock 'n Play Sleeper, this warning omits the risk that use of the Rock 'n Play Sleeper can result in positional asphyxiation. Also like the warning label on the Rock 'n Play Sleeper, this user manual warning instructs consumers to always use the restraint, but it does not disclose that keeping a baby restrained for extended periods of time can result in deformations to the head or neck. And, again, like the warning label on the Rock 'n Play Sleeper, this warning instructs users to, "always provide the supervision necessary for the continued safety of your child," but it ignores the fact that this is not possible when the baby is in the Rock 'n Play Sleeper for overnight sleep.

72.     The warning section in the manual also includes slight variations on the language on the Rock 'n Play Sleeper, but the overall impact is no less misleading. For example, the warning section in the manual uses the acronym "SIDS" and states, "Pediatricians and child health organizations agree that healthy babies should be placed on their backs to sleep for naps and at nighttime, to reduce the risk of Sudden Infant Death Syndrome (SIDS)," but it does not say that the recommendation is actually that babies should be supine and not on an incline.

73.    In addition, the warning section in the manual states:

SUFFOCATION HAZARD

Infants have suffocated:

- On added pillows, blankets and extra padding.

   o   Only use the pad provided by Fisher-Price

   o   Never place extra padding under or beside infant.

This is misleading because it does not disclose that the pad that comes with the product and the soft fabric walls that are a part of the product themselves pose a risk of suffocation.

74.    The manuals are also misleading in ways beyond the inadequate and misleading warning section. For example, some manuals show images of mothers lying down in bed, covered with blankets, which indicates either that they are ready for sleep or awakening from sleep.

75.    These images are misleading because it implies that mothers can sleep when their babies are in the sleepers, while, at the same time, Defendants warn that babies should be supervised when in a Rock 'n Play Sleeper. Mothers cannot supervise their children when they are themselves sleeping.

76.    The manuals also contain a section titled, "Preventing Baby's Head from Flattening." This section contains numerous statements that are misleading due to misrepresentations or omissions, including the following:

Pediatricians and child health organizations agree that healthy babies should be placed on their backs to sleep for naps and at nighttime, to reduce the risk of Sudden Infant Death Syndrome (SIDS). But babies who are always on their backs can sometimes develop flat spots on their head (plagiocephaly) …

This statement is misleading because it does not say that pediatricians recommend that they be **flat** on their back, thereby implying that sleeping on the back at an inclined is consistent with medical recommendations.

77. The guidelines also instruct users to:

> Change the location of your baby's sleeper or crib in the room, so she has to look in different directions...

This is also misleading because it implies that sleepers and cribs are equally safe. It does now acknowledge the additional risks that are presented by the baby being strapped in and on an incline in a Rock 'n Play Sleeper.

78. Had parents like plaintiffs, Christopher Harris and Rachel Burrus Harris been aware of the potential dangers posed by the Rock 'n Play Sleeper, or the serious risks of injury and death, they would not have purchased and/or used the product and their minor child, AH, would still be alive. Defendants' false and misleading marketing of this dangerous product, and knowing failure to disclose the grave risks of its use as a sleeper for all night sleep or prolonged sleep, allowed Defendants to reap vast profits at the expense of consumers who erroneously believed they were obtaining a safe place for their babies to sleep.

## V. **FACTUAL ALLEGATIONS OF PLAINTIFFS**

79. On December 22, 2018, the plaintiffs' son, A.H., was born.

80. In or around January or February of 2019, the plaintiffs, Christopher Harris and Rachel Burrus Harris, purchased a new Fisher-Price Auto Rock 'n Play Sleeper (Product No. FPY01) from Wal-Mart in Eunice, Louisiana. They paid approximately $64.00 for the Rock 'n Play Sleeper.

81. On the night of March 25, 2019, while at their residence located at 1397 Duplechin Road, Church Point, Louisiana, the plaintiffs placed A.H. (who was barely over 3

months old on this date) in their Fisher-Price Rock 'n Play Sleeper, on his back, for the night to
sleep.

82.     On the morning of March 26, 2019, the plaintiffs discovered A.H. lying face
down, on his stomach, in their Fisher-Price Rock 'n Play Sleeper.  He was unresponsive and his
face was on the bottom of the sleeper, face down.

83.     Plaintiffs immediately called 911.

84.     A.H. was pronounced dead on the morning of March 26, 2019, only 17 days
before the Fisher-Price Rock 'n Play was recalled.

85.     The "immediate cause" of death listed on the death certificate of A.H. states
"Positional Asphyxia."

86.     The defective and dangerous design and nature of the Fisher-Price Rock 'n Play
caused A.H. to be unable to breathe while lying in the product and/or allowed A.H. to rollover
and position his body in such a way that he was unable to breathe, resulting in his death.

87.     This tragic occurrence not only ended A.H.'s life at the young age of three (3)
months, but completely devastated A.H.'s parents, Christopher Harris and Rachel Burrus Harris.
His death could have been prevented had the Rock 'n Play Sleeper not been designed in an
unsafe and defective manner and/or had the Rock 'n Play Sleeper been taken off the market
earlier.

## VI.     CAUSES OF ACTION

### Liability Under the Louisiana Products Liability Act
### (La. R.S. § 9:2800.51, et seq.)

88.     Plaintiffs hereby incorporate by reference the allegations contained in all
preceding paragraphs of this Complaint as if fully set forth herein.

89.     Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., bring claims under the Louisiana Products Liability Act (La. R.S. § 9:2800.51, et seq.).

90.     At all times relevant to this action, Defendants, Fisher-Price and Mattel, designed, tested, manufactured, constructed, advertised, marketed, promoted, distributed and/or sold the defective Rock 'n Play Sleeper, placing the product into the stream of commerce.

91.     At all times material hereto, the Rock 'n Play Sleeper was designed, tested, inspected, manufactured, assembled, constructed, developed, labeled, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition to consumers, including the plaintiffs.

92.     The Rock 'n Play Sleeper was defective in design because when the product left the hands of the Defendants, it was unreasonably dangerous and more dangerous than an ordinary consumer would expect.

93.     The Rock 'n Play Sleeper was defective and unreasonably dangerous, in part, because it was designed and constructed in such a way that allowed infants to roll over from their back to their stomach or side, thus significantly increasing the chances of the infant sustaining serious injuries or death.

94.     The Rock 'n Play Sleeper was also defective and unreasonably dangerous in that the foreseeable risk and gravity of injuries from the ordinary and foreseeable use of the product exceeded any benefits associated with the product.

95.     The Rock 'n Play Sleeper as manufactured, distributed, supplied and/or sold by the Defendants was defective and after Defendants knew or should have known of the risk of injuries from the ordinary use of the product, they failed to provide adequate warnings to the

consumers, including the plaintiffs, to whom they were directly marketing and advertising; and further, they continued to affirmatively promote the Rock 'n Play Sleeper as a safe product, including marketing it as a safe product for overnight sleep.

96.     In light of the potential and actual risk of harm associated with the use of the Rock 'n Play Sleeper, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Rock 'n Play Sleeper should not have been marketed in that condition.

97.     Although Defendants knew or should have known of the defective nature of the Rock 'n Play Sleeper, they continued to manufacture, market, promote, distribute and/or sell it to the public, including the plaintiffs, so as to maximize sales and profits at the expense of the public safety, including at the expense of the safety of plaintiffs' now deceased minor child, A.H. Defendants thus acted with conscious and deliberate disregard of the foreseeable harm caused by the Rock 'n Play Sleeper.

98.     As a direct and proximate result of Defendants' conduct, plaintiffs, Christopher Harris and Rachel Burrus Harris, purchased and used the Rock 'n Play Sleeper for their minor child, A.H. As a result, A.H. suffered severe injuries resulting in his death.

99.     Information provided by the Defendants to the public and to consumers, such as the plaintiffs, concerning the safety of the Rock 'n Play Sleeper, especially the information contained in advertising and promotional materials, did not accurately reflect the serious and potentially fatal injuries that can result from ordinary and foreseeable use of the Rock 'n Play Sleeper.

100.    Under the Louisiana Products Liability Act, plaintiffs show that the serious risk of harm and injuries are the direct and proximate result of breaches of obligations owed by

Defendants to Plaintiffs, including defects in design, marketing, manufacturing, distribution, labeling, instructions and warning by Defendants, which breaches and defects are listed more particularly, but not exclusively, as follows:

    a.    Failure to instruct and/or warn consumer, such as plaintiffs, of the risk of serious and potentially fatal injuries that can result from ordinary and foreseeable use of the Rock 'n Play Sleeper;

    b.    Failure to adequately instruct and/or warn retailer stores, include the retail store where plaintiffs purchase their Rock 'n Play Sleeper, of the serious and potentially fatal risk of injuries that can result from ordinary and foreseeable use of the product;

    c.    Manufacturing, designing, constructing, producing, promoting, distributing and/or marketing the defective Rock 'n Play Sleeper without adequately testing it;

    d.    Failing to provide adequate warnings of the dangers and risks associated with the Rock 'n Play Sleeper;

    e.    Manufacturing, designing, constructing, producing, promoting, marketing, selling and/or distributing a defective product (Rock 'n Play Sleeper) when it knew, or reasonably should have known, of the risk of serious and potentially fatal injuries that can result from the ordinary and foreseeable use of the product;

    f.    Defendants' liability under the Louisiana Products Liability Act arises, in part, as a result of their design, development, manufacturing, distributing, selling, marketing and construction of a product which is defective and unreasonably dangerous as it poses a risk of serious and potentially fatal injuries;

    g.    The continued production and sale of the defective Rock 'n Play Sleeper given the risk of the product to cause serious and potentially fatal injuries;

    h.    Providing inaccurate labeling and inadequate warnings and instructions;

    i.    Utilizing testing methods which were not accurate and reliable;

    j.    Other breaches and defects which may be shown through discovery or at trial; and

    k.    Generally, the failure of Defendants to act with the required degree of care commensurate with the existing situation.

## COUNT I

### Design Defect Under La. R.S. § 9:2800.56

101.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

102.    At all times relevant, Defendants, Fisher-Price and Mattel, designed, researched, manufactured, tested, advertised, promoted, marketed, distributed and/or sold the defective Rock 'n Play Sleeper as hereinabove describe that was used by the plaintiffs, Christopher Harris and Rachel Burrus Harris, and used by their now deceased minor child, A.H.

103.    The Rock 'n Play Sleeper was expected to and did reach the usual consumers, including the plaintiffs, who came into contact with the product without substantial change in the condition in which it was designed, produced, manufactured, marketed, distributed and/or sold by Defendants.

104.    At those times, the Rock 'n Play Sleeper was in an unsafe, defective and inherently dangerous condition, which was dangerous to users, and in particular, plaintiffs, Christopher Harris, Rachel Burrus Harris and their minor child, A.H., because, in part, it was designed and constructed in such a way that allowed infants to roll over from their back to their stomach or side.

105.    The Rock 'n Play Sleeper designed, researched, manufactured, tested, advertised, promoted, marketed, distributed and/or sold by Defendants was defective in design in that, when it left the hands of the Defendants/manufacturers and/or suppliers/Defendants, the foreseeable risks exceeded the benefits associated with the design of the Rock 'n Play Sleeper.

106.    The Rock 'n Play Sleeper designed, researched, manufactured, tested, advertised, promoted, marketed, distributed and/or sold by Defendants was defective in design, in that, when

it left the hands of the Defendants/manufacturers and/or suppliers/Defendants, it was unreasonably dangerous, and it was more dangerous and posed a risk greater than an ordinary consumer, such as the plaintiffs, would expect;

107. At all times relevant, the Rock 'n Play Sleeper was in a defective condition and unsafe, and Defendants knew or had reason to know that the Rock 'n Play Sleeper was defective and unsafe, especially when used in the form and manner as promoted, marketed and advertised by Defendants.

108. Defendants knew, or should have known, that all times relevant, the Rock 'n Play Sleeper was in a defective condition and was inherently dangerous, unsafe and potentially fatal.

109. At the time of A.H.'s death, the Rock 'n Play Sleeper of the plaintiffs was being used for the purposes and in a manner normally intended and, in a manner, reasonably foreseeable, namely, for all night sleep and/or prolonged sleep. The box that the plaintiffs' Rock 'n Play Sleeper came in proudly boasted that, "Baby can sleep at a comfortable incline all night long!"

110. Defendants, with this knowledge, voluntarily designed the Rock 'n Play Sleeper in a dangerous condition for use by the public and consumers and in particular, plaintiffs, Rachel Burrus, Christopher Harris and their now deceased minor child, A.H.

111. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended and reasonably foreseeable and expected use.

112. In creating and designing the defective Rock 'n Play Sleeper, Defendants created and designed a product that was unreasonably dangerous for its normal, intended and expected use, and a safer alternative design existed.

113.    The Rock 'n Play Sleeper designed, researched, manufactured, tested, advertised, promoted, marketed distributed and/or sold by Defendants reached the intended users and consumers, such as the plaintiffs, in the same defective and unreasonably dangerous condition in which the Rock 'n Play Sleeper was designed and manufactured.

114.    At all times relevant, the likelihood that the Rock 'n Play Sleeper's defective design would cause injury and damages and the gravity of those injuries and damages outweighed the burden on the manufacturers/Defendants of adopting an alternative, safer design and further, outweighed the adverse effect, if any, that an alternative, safer design would have on the utility of the Rock 'n Play Sleeper.

115.    Defendants designed, researched, constructed, manufactured, tested, advertised, promoted, marketed, distributed and/or sold a defective product (the Rock 'n Play Sleeper) that created an unreasonable risk of harm and injury to consumers, such as the plaintiffs and their minor child, A.H.; Defendants are therefore liable for the injuries and damages sustained by plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., in accordance with the Louisiana Products Liability Act.

116.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, could not, by the exercise of reasonable care, have discovered the defects in the Rock 'n Play Sleeper as mentioned herein and perceived its potentially fatal danger posed towards their minor child, A.H.

117.    Defendants' defective design, manufacturing defect and inadequate warnings of the Rock 'n Play Sleeper were acts that amount to willful, wanton and/or reckless conduct by Defendants.

118.    The defects in the Defendants' Rock 'n Play Sleeper were a substantial and contributing factor in causing the injuries and damages of plaintiffs, including but not limited to the death of A.H.

119.    Due to the unreasonably dangerous and defective nature of the Rock 'n Play Sleeper, Defendants are liable to plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H.

120.    As a result of the foregoing acts and omissions, Defendants caused A.H., the minor son of plaintiffs, to suffer severe injuries and death, including but not limited to severe pain and suffering and mental anguish and anxiety, in the moments prior to the death of A.H.

121.    As a result of the foregoing acts and omissions, Defendants caused plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., to suffer damages for the wrongful death of A.H., including but not limited to severe grief, mental anguish and anxiety, loss of consortium, loss of love, society, affection, support, care, familial relationship and loss of comfort arising from the wrongful death of their minor/infant child, A.H., and funeral and burial expenses of A.H.

## COUNT II

### Inadequate Warning Under La. R.S. § 9:2800.57

122.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth herein.

123.    Defendants, Fisher-Price and Mattel, researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed and/or introduced the Rock 'n Play Sleeper into the stream of commerce, and in the course of doing so, directly advertised and marketed the Rock 'n Play Sleeper to consumers and therefore, had a duty to

plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., to adequately warn of risks associated with the use of the product, including, but not limited to, the risk of serious and potentially fatal injury.

124. The warning label attached to the plaintiffs' Rock 'n Play Sleeper and included in its manual did not warn consumers, including the plaintiffs, of the risk of, among other dangers, positional asphyxiation.

125. Defendants were, or should have been, aware that the Rock 'n Play Sleeper was dangerous and not suitable for unsupervised infant sleep or use or for overnight sleep, all night sleep and/or prolonged sleep.

126. Defendants knew or should have known that consumers such as the plaintiffs would rely on Defendants to warn them of all of the dangers posed by the Rock 'n Play Sleeper.

127. The Rock 'n Play Sleeper's dangerous nature was not and is not open and obvious to consumers, including to the plaintiffs. Plaintiffs, Christopher Harris and Rachel Burrus Harris, could not, by the exercise of reasonable care, have discovered the defects in the Rock 'n Play Sleeper as mentioned herein and perceived its potentially fatal danger posed towards their minor child, A.H.

128. Defendants had/have a duty to warn of the risk of injury and harm associated with their products, including the Rock 'n Play Sleeper, which they knew or should have known can be caused by the use of the Rock 'n Play Sleeper, and specifically, the use of the Rock 'n Play Sleeper for prolonged and/or overnight or all night sleep.

129. The Rock 'n Play Sleeper designed, manufactured, produced, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was defective when it left the control of its manufacturers/Defendants in that it failed to include adequate

warnings of the dangerous and potentially fatal characteristics of the Rock 'n Play Sleeper, including but not limited to the characteristic and/or design of the Rock 'n Play Sleeper which allows infants to roll over from their back to their stomach or side. The warnings given by Defendant did not sufficiently and/or adequately reflect the type, scope or severity of the risks associated with the Rock 'n Play Sleeper, and, in particular, the risk of serious and potentially fatal injury.

130.     The Rock 'n Play Sleeper was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the public and consumers of the serious potential risks and dangers associated with the product, including plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor, A.H., thereby rendering Defendants liable to plaintiffs.

131.     Defendants failed to provide adequate warnings to users and handlers of the product, including plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor, A.H., of the serious risk of injuries and death associated with the ordinary and expected use of the Rock 'n Play Sleeper, although Defendants aggressively promoted the product to consumers.

132.     The severe and potentially fatal dangers and risks of using the Rock 'n Play Sleeper, which Defendants failed to adequately warn plaintiffs of, arose from a reasonably anticipated use of the Rock 'n Play Sleeper: all night sleep. The box that the plaintiffs' Rock 'n Play Sleeper came in proudly boasted that, "Baby can sleep at a comfortable incline all night long!"

133.     The injuries and damages of plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., arose from a reasonably anticipated

use of the Rock 'n Play Sleeper as A.H. was sleeping in the Rock 'n Play Sleeper at the time of his fatal injuries. Certainly, sleeping in a product named, labeled and promoted as a "Sleeper" is a reasonably anticipated use of the product.

134. Due to the inadequate warning regarding the risk of serious and potentially fatal injuries, the Rock 'n Play Sleeper was in a defective condition and unreasonably dangerous at the time if left the control of Defendants.

135. Defendants' failure to adequately warn plaintiffs of the serious risk of severe injury and death prevented plaintiffs from correctly and fully evaluating the risks and benefits of the Rock 'n Play Sleeper.

136. Had plaintiffs, Christopher Harris and Rachel Burrus Harris, been adequately warned of the serious risk of severe injury and death associated with the Rock 'n Play Sleeper, plaintiffs would not have purchased and used the Rock 'n Play Sleeper.

137. As a direct and proximate result of Defendants' failure to warn of the severe risks associated with the Rock 'n Play Sleeper, plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., suffered serious injuries, including but not limited to the death of A.H.

138. As a result of the foregoing acts and omissions, Defendants caused A.H., the minor son of plaintiffs, to suffer severe injuries and death, including but not limited to severe pain and suffering and mental anguish and anxiety, in the moments prior to the death of A.H.

139. As a result of the foregoing acts and omissions, Defendants caused plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., to suffer damages for the wrongful death of A.H., including but not limited to severe grief, mental anguish and anxiety, loss of consortium, loss of love, society, affection, support, care,

familial relationship and loss of comfort arising from the wrongful death of their minor/infant child, A.H., and funeral and burial expenses of A.H.

## COUNT III

### Breach of Express Warranty Under La. R.S. § 9:2800.58

140.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth herein.

141.    Defendants, Fisher-Price and Mattel, expressly warranted that the Rock 'n Play Sleeper was safe for ordinary use and reasonably foreseeable and expected use by consumers, including plaintiffs. Specifically, Defendants expressly warranted that the Rock 'n Play Sleeper was safe for infants and babies, such as the infant child of plaintiffs, A.H., to sleep in.

142.    The box that the plaintiffs' Rock 'n Play Sleeper came in proudly boasted that, **"Baby can sleep at a comfortable incline all night long!"**

143.    The Rock 'n Play Sleeper did not conform to these express warranties and representations because the Rock 'n Play Sleeper was not safe as there were serious risks associated with the use of the Rock 'n Play Sleeper, including but not limited to the risk of serious injury and death arising from all night sleep or prolonged sleep in the Sleeper, which said risks were not accurately warned about by Defendants.

144.    As a direct and proximate result of the breach of these warranties, plaintiffs' minor son, A.H., suffered fatal injuries.

145.    Defendants knew or should have known that consumers such as the plaintiffs would rely on Defendants to warn them of all of the dangers posed by the Rock 'n Play Sleeper.

146.    The Rock 'n Play Sleeper's dangerous nature was not and is not open and obvious to consumers, including to the plaintiffs. Plaintiffs, Christopher Harris and Rachel Burrus

Harris, could not, by the exercise of reasonable care, have discovered the defects in the Rock 'n Play Sleeper as mentioned herein and perceived its potentially fatal danger posed towards their minor child, A.H.

147.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., relied on Defendants' express warranties. Furthermore, the express warranties represented by Defendants were part of the basis for plaintiffs' purchase and use of the Rock 'n Play Sleeper as they, in part, relied on these warranties in deciding to purchase and use the Rock 'n Play Sleeper for their infant son, A.H.

148.    At the time of making these express warranties, Defendants had knowledge of the purpose for which the Rock 'n Play Sleeper was to be used by consumers, and warranted it to be in all respects safe, effective and proper for such use.

149.    Defendants expressly represented to plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., that the Rock 'n Play Sleeper was safe and fit for use for purposes intended and reasonably foreseeable, that it was of merchantable quality, that it did not pose a serious risk of injury and death, that the risks it did produce were accurately reflected in the warnings and that it was adequately fit for its intended use.

150.    Defendants knew or should have known that, in fact, their representations and warranties were false, misleading and untrue in that the Rock 'n Play Sleeper was not safe and fit for the use intended and reasonably foreseeable, and, in fact, the Rock 'n Play Sleeper posed a risk of serious injury and death to users and consumers, such as the plaintiffs, that were not accurately identified and represented by Defendants.

151.    As a result of the foregoing acts and omissions, Defendants caused A.H., the minor son of plaintiffs, to suffer severe injuries and death, including but not limited to severe pain and suffering and mental anguish and anxiety, in the moments prior to the death of A.H.

152.    As a result of the foregoing acts and omissions, Defendants caused plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., to suffer damages for the wrongful death of A.H., including but not limited to severe grief, mental anguish and anxiety, loss of consortium, loss of love, society, affection, support, care, familial relationship and loss of comfort arising from the wrongful death of their minor/infant child, A.H., and funeral and burial expenses of A.H.

## COUNT IV

### Redhibition

153.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth herein.

154.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, bring this claim individually and as the surviving parents of A.H. and on behalf of the A.H.

155.    Pursuant to La. C.C. art. 2520, a seller warrants the buyer against redhibitory defects, or vices, in the thing sold. The Rock 'n Play Sleeper, which was sold, promoted and marketed by Defendants, Fisher-Price and Mattel, possesses a redhibitory defect because it is unreasonably dangerous, as described above, which renders the Rock 'n Play Sleeper useless and/or so inconvenient that it must be presumed the plaintiffs, Christopher Harris and Rachel Burrus Harris, would not have purchased the Rock 'n Play Sleeper had they known of the defects.

156.    The Rock 'n Play Sleeper was defective and unreasonably dangerous, in part, because it was designed and constructed in such a way that allowed infants to roll over from their back to their stomach or side, thus significantly increasing the chances of the infant sustaining serious injuries or death, including the risk of positional asphyxiation.

157.    Pursuant to La. C.C. art. 2520, et seq., Defendants, through their manufacturing, marketing, sales and/or distribution of the Rock 'n Play Sleeper, warranted to plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor son, A.H., that the Rock 'n Play Sleeper was free of redhibitory defects.

158.    The Defendants were aware of the substantial risks of severe injury and death associated with the use of the Rock 'n Play Sleeper but failed to fully disclose those risks to consumers, including the plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor son, A.H.

159.    In accordance with La. C.C. art. 2545, Defendants, as the manufacturers, distributors and sellers of the defective Rock 'n Play Sleeper, are deemed to be aware of its redhibitory defects.

160.    Defendants owed a duty to plaintiffs, Christopher Harris and Rachel Burrus Harris, as purchasers of the Rock 'n Play Sleeper, that the Rock 'n Play Sleeper would be free from redhibitory defects.

161.    Christopher Harris and Rachel Burrus Harris, as the purchasers of the Rock 'n Play Sleeper, had no knowledge of the defects and could not have discovered the defects prior to purchasing the Rock 'n Play Sleeper. The redhibitory defects in the Rock 'n Play Sleeper were neither known nor apparent to plaintiffs.

162.    The condition and characteristics of the Rock 'n Play Sleeper which makes it a serious risk of severe injury and death as a result of the ordinary and/or reasonably foreseeable use of the Rock 'n Play Sleeper are redhibitory defects that rendered the Defendants' Rock 'n Play Sleeper totally useless for its intended purposes, including the purpose of all night sleep or prolonged sleep.

163.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor son, A.H., would not have paid for the Rock 'n Play Sleeper if they had known of its redhibitory defects.  The defective nature and characteristics of the Rock 'n Play Sleeper rendered it unfit for its intended purposes.

164.    Defendants had actual and/or constructive knowledge that the Rock 'n Play Sleeper they designed, manufactured, promoted, sold and/or distributed had redhibitory defects but omitted to inform the plaintiffs of these defects.

165.    Instead, Defendants falsely represented that the Rock 'n Play Sleeper was a safe product when Defendants knew, or should have known, that it was not.

166.    The redhibitory defects existed at the time that plaintiffs, Christopher Harris and Rachel Burrus Harris, purchased the Rock 'n Play Sleeper.

167.    But for Defendants' false representations and omissions about the redhibitory defects associated with the Rock 'n Play Sleeper, plaintiffs, Christopher Harris and Rachel Burrus Harris, would not have purchased the Rock 'n Play Sleeper.

168.    Defendants breached their warranty of redhibition which directly and proximately caused plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., to suffer the damages alleged herein, including but not limited to the death of A.H.

169. Defendants are liable to plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., under the theory of redhibition as a consequence of the sale to plaintiffs, Christopher Harris and Rachel Burrus Harris, of a product unfit for its intended use.

170. Due to the redhibitory defects in the Rock 'n Play Sleeper, plaintiffs are entitled to a return of the purchase price paid for the Rock 'n Play Sleeper, including but not limited to sales tax, interest on this amount from the date of purchase, attorney fees and costs, pecuniary and non-pecuniary damages, as well as any other legal and equitable relief to which Plaintiffs may be entitled.

171. As a result of the foregoing acts and omissions, Defendants caused A.H., the minor son of plaintiffs, to suffer severe injuries and death, including but not limited to severe pain and suffering and mental anguish and anxiety, in the moments prior to the death of A.H.

172. As a result of the foregoing acts and omissions, Defendants caused plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., to suffer damages for the wrongful death of A.H., including but not limited to severe grief, mental anguish and anxiety, loss of consortium, loss of love, society, affection, support, care, familial relationship and loss of comfort arising from the wrongful death of their minor/infant child, A.H., and funeral and burial expenses of A.H.

## COUNT V

### Negligence

173. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth herein.

174.    The defendants, Fisher-Price and Mattel, supplied, manufactured, promoted, marketed, distributed and/or sold the Rock 'n Play Sleeper.

175.    The defendants had a duty to exercise ordinary care to supply, manufacture, distribute and/or sell a product to consumers, including the plaintiffs, Christopher Harris and Rachel Burrus Harris, that was not defective.

176.    The Defendants breached their duty of care owed to plaintiffs by, among other acts and/or omissions, designing, manufacturing, supplying, promoting, marketing, distributing and/or selling a product (the Rock 'n Play Sleeper) that was defective such that ordinary and foreseeable use of the product can lead to severe injury or death.

177.    The Rock 'n Play Sleeper was defective and unreasonably dangerous, in part, because it was designed and constructed in such a way that allowed infants to roll over from their back to their stomach or side, thus significantly increasing the chances of the infant sustaining serious injuries or death.

178.    Additionally, the Defendants were negligent in advertising, promoting and marketing the Rock 'n Play Sleeper as a product for infants/babies that is safe for prolonged and/or all night sleep, when, in actuality, Defendants knew, or should have known, that the product was note safe and especially not safe for prolonged and/or overnight sleep.

179.    The box that the plaintiffs' Rock 'n Play Sleeper came in proudly boasted that, **"Baby can sleep at a comfortable incline all night long!"**

180.    As manufacturers, distributors and sellers, Fisher-Price and Mattel, have a duty to use reasonable care in designing their product so that it is safe when used in the manner intended, as well as any reasonably foreseeable use.

181. The Rock 'n Play Sleeper was marketed, advertised, promoted and sold as a device in which infants could safely lie and sleep, including for overnight use. However, as shown herein, the Rock 'n Play Sleeper was not safe for that intended use.

182. Instead, because of the defective design of the Rock 'n Play, including the Rock 'n Play's incline, soft cushion and dangerous seat shape, hundreds of infants have been injured and dozens have died, including the infant child of plaintiffs, A.H., while the Rock 'n Play Sleeper was used for its intended and marketed purpose.

183. Defendants failed to exercise reasonable care in ensuring that the design of the Rock 'n Play was free from defects and was safe for infants to lay and sleep in. Defendants' negligent acts included failure to ensure that the design of the Rock 'n Play conformed to AAP standards or to modify or discontinue the product upon receiving reports of injuries to, and deaths of, infants in the product.

184. Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., suffered damages and injuries as a result of negligent manufacturing, fabricating, constructing, designing, testing, assembling, installing, marketing, promoting, advertising and/or distribution of the Rock 'n Play Sleeper by the defendants, including but not limited to the specific Rock 'n Play Sleeper that plaintiffs purchased and in which plaintiffs' minor son, A.H., died.

185. As a result of the foregoing acts and omissions, Defendants caused A.H., the minor son of plaintiffs, to suffer severe injuries and death, including but not limited to severe pain and suffering and mental anguish and anxiety, in the moments prior to the death of A.H.

186. As a result of the foregoing acts and omissions, Defendants caused plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child,

A.H., to suffer damages for the wrongful death of A.H., including but not limited to severe grief, mental anguish and anxiety, loss of consortium, loss of love, society, affection, support, care, familial relationship and loss of comfort arising from the wrongful death of their minor/infant child, A.H., and funeral and burial expenses of A.H.

## COUNT VI

### Negligent Misrepresentation

187.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth herein.

188.    Defendants, Fisher-Price and Mattel, through their marketing materials, website and the packaging of the Rock 'n Play Sleeper, consistently represented to the public throughout the period they were selling the product that it was a product safe for unsupervised infants to lie and sleep in, including for overnight and/or prolonged sleep.

189.    The box that the plaintiffs' Rock 'n Play Sleeper came in proudly boasted that, **"Baby can sleep at a comfortable incline all night long!"**

190.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, reasonably relied on Defendants' misrepresentations in purchasing and using the Rock 'n Play Sleeper, including using it for overnight and/or prolonged sleep for their minor child, A.H.

191.    At the time of sale of the Rock 'n Play Sleeper to plaintiffs, Defendants knew, or should have known, that their representations about the safety of the Rock 'n Play Sleeper were false and misleading.

192.    Defendants' representations that the Rock 'n Play Sleeper was safe, including safe for all night sleep and/or prolonged sleep, were material to the decision of the plaintiffs to purchase the Rock 'n Play Sleeper.

193. Defendants failed to exercise reasonable care in communicating correct information regarding the safety of the Rock 'n Play Sleeper for infants.

194. These misrepresentations were made uniformly to the consuming public, including the plaintiffs. Plaintiffs relied on Defendants' representations that the Rock 'n Play Sleeper was safe for unsupervised infant sleep and use, including overnight and/or prolonged sleep, and would not have purchased and used the Rock 'n Play Sleeper had Defendants not represented that it was a safe product for infant children.

195. As a result of Defendants' negligent misrepresentations that the Rock 'n Play Sleeper was safe for unsupervised infant use and sleep despite ample evidence to the contrary, the plaintiffs suffered serious injuries and damages, including but not limited to the death of their minor child, A.H.

196. As a result of the foregoing acts and omissions, Defendants caused A.H., the minor son of plaintiffs, to suffer severe injuries and death, including but not limited to severe pain and suffering and mental anguish and anxiety, in the moments prior to the death of A.H.

197. As a result of the foregoing acts and omissions, Defendants caused plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., to suffer damages for the wrongful death of A.H., including but not limited to severe grief, mental anguish and anxiety, loss of consortium, loss of love, society, affection, support, care, familial relationship and loss of comfort arising from the wrongful death of their minor/infant child, A.H., and funeral and burial expenses of A.H.

## COUNT VII

### Violation of the Magnuson-Moss Warranty Act

198.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth herein.

199.    The sale of the Rock 'n Play Sleeper was subject to the Magnuson Moss Warranty Act 15 U.S.C. § 2301, et seq.

200.    The Rock 'n Play Sleeper is a "consumer product" within the meaning of the Magnuson Moss Warranty Act 15 U.S.C. § 2301(1), et seq., because it is tangible personal property distributed in commerce and normally used for family or household purposes.

201.    The plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., are "consumers" under 15 U.S.C. § 2301(3) because they are buyers of the Rock 'n Play Sleeper during the duration of the implied and express warranties made regarding the Rock 'n Play Sleeper.

202.    Defendants, Fisher-Price and Mattel, are "suppliers" and "warrantors" under 15 U.S.C. § 2301(4) – (5).  Defendants were engaged in the business of making the Rock 'n Play available to consumers and sold the Rock 'n Play with express and implied warranties.

203.    Defendants made "written warranties" to consumers of the Rock 'n Play Sleeper under 15 U.S.C. § 2301(6), through Defendants' written affirmations of fact and written promises regarding the Rock 'n Play Sleeper's level of performance and nature of the product. Specifically, Defendants represented in advertisements, online listing and on the product packaging itself that the Rock 'n Play Sleeper was safe for infant sleep and use, including but not limited to overnight and/or prolonged sleep.  These written affirmations formed the basis of the bargain between Defendants and plaintiffs, as purchasers of the Rock 'n Play Sleeper.

204.    Defendants further made "implied warranties" to consumers, such as plaintiffs, of the Rock 'n Play Sleeper under 15 U.S.C. § 2301(7) in that Defendants sold the Rock 'n Play Sleeper as a "sleeper" that complied with applicable standards, indicating that the product was safe for unsupervised infant sleep.

205.    Defendants breached these warranties because the Rock 'n Play Sleeper did not meet the affirmations, promises, representations and assertions made by Defendants regarding the Rock 'n Play Sleeper.  The Rock 'n Play was, in fact, not safe for use by infants for the ordinary purpose for which it was used.

206.    Although Fisher-Price has recalled the Rock 'n Play Sleeper, the refunds or gift cards offered to consumers of the Rock 'n Play Sleeper, such as plaintiffs, do not make the consumer whole in the full amount paid by each consumer, such as plaintiffs.

207.    As a result of Defendants' violations of the Magnuson Moss Warranty Act, including the written and implied warranties Defendants made to consumers of the Rock 'n Play Sleeper, such as plaintiffs, the plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VIII

### Fraud and Fraudulent Concealment

208.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

209.    Plaintiffs bring this claim individually and as the surviving parents of A.H.

210.    Under Louisiana law, "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or

inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code art. 1953.

211.    Under Louisiana law, to recover under a cause of action in delictual fraud, a plaintiff must prove three elements: 1) a misrepresentation of material fact, 2) made with the intent to deceive, 3) causing justifiable reliance and resultant injury. *Becnel v. Grodner*, 2007-1041 (La. App. 4 Cir. 4/2/08), 982 So. 2d 891, 894.

212.    The Defendants, Fisher-Price and Mattel, knew, or should have known, that the Rock 'n Play Sleeper was dangerous and not safe for its intended, advertised and reasonably anticipated use (all night sleep and/or prolonged sleep) yet they continued to intentionally advertise and market the Rock 'n Play Sleeper as a safe all night sleep product.    These advertisements, marketing efforts and misrepresentations that the Rock 'n Play Sleeper was safe for overnight sleep and/or prolonged sleep caused a justifiable reliance by consumers, including plaintiffs, Christopher Harris and Rachel Burrus Harris, which resulted in serious injuries and damages to plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of A.H., and resulted in the death of A.H.

213.    The box that the plaintiffs' Rock 'n Play Sleeper came in proudly boasted that, **"Baby can sleep at a comfortable incline all night long!"**

214.    The plaintiffs, Christopher Harris and Rachel Burrus Harris, were justified in their reliance on the misrepresentations by Fisher-Price and Mattel as it is reasonable to expect lay people, such as the plaintiffs, to rely on the representations made by Fisher-Price and Mattel, one of the world's largest and most well-known manufacturers, designers, distributors and sellers of toy and baby/infant products, when deciding whether to purchase and use a particular baby/infant product.

215.    On information and belief, the Defendants violated their general duty not to actively deceive and have made knowingly false statements and have omitted and/or concealed information which made statements by the Defendants knowingly false.

216.    As alleged herein, on information and belief, the Defendants knowingly and/or intentionally made representations that were false, which included, but were not limited to, representations that the Rock 'n Play Sleeper was safe for overnight sleep and/or prolonged sleep. The Defendants had a duty to disclose material facts and concealed them. These false representations and concealed facts were material to the conduct and actions at issue. The Defendants made these false representations and concealed facts with knowledge of the falsity of their representations and did so with the intent of misleading consumers such as Christopher Harris and Rachel Burrus Harris.

217.    These false representations and concealments were reasonably calculated to deceive consumers such as the plaintiffs, Christopher Harris and Rachel Burrus Harris, and did in fact deceive Christopher Harris and Rachel Burrus Harris.

218.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, relied on these false representations and concealments of material fact when deciding to purchase and use the Rock 'n Play Sleeper.

219.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, justifiably relied on the Defendants' representations and/or concealments, both directly and indirectly. The injuries of Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of A.H., and the resulting death of A.H. were proximately caused by this reliance.

220.    The injuries alleged herein by Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of A.H, were sustained as a direct and proximate cause of the Defendants' fraudulent conduct.

221.    Plaintiffs seek economic losses (direct, incidental, or consequential pecuniary losses) resulting from Defendants' fraudulent activity, including fraudulent misrepresentations and fraudulent concealment.

222.    Plaintiffs seek all legal and equitable relief as allowed by law, including but not limited to all damages allowed by law to be paid by the Defendants, attorney fees and costs, and pre- and post-judgment interest.

223.    Defendants had a duty to disclose material facts to plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of A.H, including but not limited to the material facts that they were manufacturing, designing, distributing and/or selling a product that was dangerous and unfit for its intended, advertised and reasonably anticipated use: overnight and/or prolonged sleep.

224.    Upon information and belief, Defendants knew, or should have known, that the Rock 'n Play Sleeper was dangerous and unfit for prolonged and/or overnight sleep, yet they continued to market and advertise it as a safe overnight sleeping product.

225.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of A.H., reasonably relied on Defendants' failure to disclose the dangerous nature of the Rock 'n Play Sleeper, including the dangers of using it as an overnight and/or prolonged sleeper, insofar as they would not have purchased the Rock 'n Play Sleeper had they known it was dangerous and unsafe for overnight sleep and/or prolonged sleep.

226.   As a direct and proximate result of Defendants' fraudulent concealment, plaintiffs, Christopher Harris and Rachel Burrus Harris, individually, suffered serious injuries and damages including but not limited to emotional distress, mental anguish and anxiety, loss of consortium with A.H. and grief, and plaintiffs' minor child, A.H., sustained serious injuries including pain and suffering, mental anguish and anxiety and death.

## COUNT IX

### Loss of Consortium

227.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth herein.

228.   Plaintiffs, Christopher Harris and Rachel Burrus Harris, as the surviving parents of their deceased infant child, A.H., each bring a loss of consortium claim for the loss of love, society, affection, support, care, familial relationship and loss of comfort arising from the wrongful death of their minor/infant child, A.H.

229.   A.H.'s death occurred as a proximate result of Defendants' (Fisher-Price and Mattel) design and/or sale of the defective Rock 'n Play Sleeper and the negligent and reckless breaches of duties by Defendants, as described herein.

## VII.   DAMAGES

230.   As a result of the causes of action detailed herein, Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., maintain this action for the wrongful death of their minor child, A.H., and as such, plaintiffs, Christopher Harris and Rachel Burrus Harris, allege that they are entitled to and therefore claim damages in a reasonable sum for the following non-exclusive items of damages:

a.   Grief, past, present and future;

b.      Emotional distress, past, present and future;

c.      Mental anguish and anxiety, past, present and future;

d.      Medical expenses incurred as a result of the injuries and death of A.H.;

e.      Loss of consortium with their minor child, A.H., past, present and future;

f.      Loss of love, affection, companionship, society and services arising from the wrongful death of A.H., past, present and future;

g.      Funeral and burial expenses of A.H.;

h.      Return of the purchase price of the Auto Rock 'n Play Sleeper; and

i.      All other elements of damages allowed under law for the death of A.H.

231.    Christopher Harris and Rachel Burrus Harris, as the surviving parents of A.H., are entitled to and therefore maintain a survival action on behalf of decedent, A.H, for the following non-exclusive items of damages suffered by A.H. prior to his death:

a.      Physical injuries;

b.      Pain and suffering;

c.      Mental anguish and anxiety; and

d.      All other elements of damages allowed under law.

232.    Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., as the surviving parent of A.H. and in accordance with La. C.C. art. 2315, et seq., assert this survival action and wrongful death against the Defendants in solido, seeking all such damages as may be reasonable in the premises, including but not limited to damages for the pain and suffering of A.H. and the grief, mental anguish and anxiety, suffering, loss of consortium, service and society of Christopher Harris and Rachel Burrus Harris.

233.    By reason of the foregoing, Plaintiffs, Christopher Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., demand judgment against each

Defendant, individually, jointly, severally and in solido for damages in a sum in excess of $75,000.00, plus legal interest, costs, attorney fees (to the extent allowed by law), punitive damages (to the extent allowed by law) and all such other and further relief as the Court deems proper.

## JURY TRIAL DEMANDED

234.   Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, plaintiffs, Christopher W. Harris and Rachel Burrus Harris, individually and on behalf of their minor child, A.H., pray for judgment jointly, severally and in solido, condemning said defendants, Fisher-Price, Inc. and Mattel, Inc., jointly, severally and in solido, to pay unto plaintiffs all general, punitive and compensatory damages available to plaintiffs under law, in a reasonable sum, together with legal interest from date of judicial demand until paid, attorney fees and for all costs of these proceedings.

Respectfully Submitted:

THE LAW OFFICES OF
KENNETH W. DEJEAN

Kenneth W. DeJean (No. 4817)
Adam R. Credeur (No. 35095)
417 West University Avenue (70506)
Post Office Box 4325
Lafayette, Louisiana 70502
Phone:       (337) 235-5294
Facsimile:   (337) 235-1095
kwdejean@kwdejean.com
adam@kwdejean.com
COUNSEL FOR PLAINTIFFS

**PLEASE ISSUE A SUMMONS FOR:**

FISHER-PRICE, INC.
Through its registered agent:
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

MATTEL, INC.
Through its registered agent:
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801